No. 21-2083C
(Senior Judge Smith)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GORDON D. SONDLAND,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

## <u>DEFENDANT'S PRETRIAL BRIEF</u>

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

WILLIAM J. GRIMALDI
Assistant Director
GEOFFREY M. LONG
Senior Trial Counsel
JOSHUA D. TULLY
CATHERINE M. YANG
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044

OF COUNSEL:

MICHAEL ZUBROW
Attorney-Adviser
Office of the Legal Adviser
U.S. Department of State

February 3, 2025

Attorneys for Defendant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF FACTS ................................................................................3

    I.     Amb. Sondland Is Requested To Appear Before Congress, Retains
          Private Counsel, And Testifies ................................................................3

    II.    Amb. Sondland's Post-Testimony Efforts To Secure
          Reimbursement Of His Private Counsel Legal Fees................................7

STATEMENT OF ISSUES OF FACT AND LAW ....................................................10

APPLICABLE LEGAL PRINCIPLES....................................................................10

    I.     For The Court To Find A Contract, Amb. Sondland Must Prove A
          Bargained-For Exchange And Sufficiently Definite Terms ..................10

    II.    Ambassador Sondland Cannot Prove A Contract..................................13

          A.     The Alleged Contract Lacks Consideration Because There
                  Was No Bargained-For Exchange .............................................13

          B.     In Addition To Lacking Consideration, The Alleged
                  Contract Has No Terms And Therefore Is Unenforceable;
                  Mutual Intent And Actual Authority Are Also Lacking.............18

    III.   Because Amb. Sondland Cannot Prove A Contract, He Cannot
          Show Breach ........................................................................................19

    IV.   Even If The Court Were To Find A Contract, Ambassador
          Sondland Would Not Be Entitled To Damages ....................................20

OBJECTIONS TO PLAINTIFF'S EXHIBITS ...........................................................21

CONCLUSION................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ace–Fed. Reps., Inc. v. Barram*,
   226 F.3d 1329 (Fed. Cir. 2000) ........................................................................... 13

*Allen v. United States*,
   100 F.3d 133 (Fed. Cir. 1996) .............................................................................. 17

*Anchor Tank Lines, LLC v. United States*,
   127 Fed. Cl. 484 (2016) ....................................................................................... 17

*Anchorage v. United States*,
   123 F.4th 1315 (Fed. Cir. 2024) .................................................................... 16, 20

*Anchorage v. United States*,
   148 Fed. Cl. 338 (2020) ....................................................................................... 16

*Anderson v. United States*,
   344 F.3d 1343 (Fed. Cir. 2003) ..................................................................... 11, 12

*Aviation Contractor Emps., Inc. v. United States*,
   945 F.2d 1568 (Fed. Cir. 1991) ..................................................................... 12, 19

*Balt. & Ohio R.R. Co. v. United States*,
   261 U.S. 592 (1923) ............................................................................................ 11

*Bank of Guam v. United States*,
   578 F.3d 1318 (Fed. Cir. 2009) ........................................................................... 11

*City of Cincinnati v. United States*,
   153 F.3d 1375 (Fed. Cir. 1998) ........................................................................... 11

*D & N Bank v. United States*,
   331 F.3d 1374 (Fed. Cir. 2003) ........................................................................... 18

*Davis Wetlands Bank, LLC v. United States*,
   114 Fed. Cl. 113 (2013) ....................................................................................... 17

*Doe v. United States*,
   95 Fed. Cl. 546 (2010) ......................................................................................... 13

*First Fed. Sav. & Loan Ass'n of Rochester v. United States*,
   58 Fed. Cl. 139 (2003) ......................................................................................... 12

*Gardiner, Kamya, & Assocs., P.C. v. Jackson*,
   369 F.3d 1318 (Fed. Cir. 2004) ..................................................................... 15, 16

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.*,
    452 F.3d 1353 (Fed. Cir. 2006) ..................................................................... 13, 18

*Gregory v. United States*,
    37 Fed. Cl. 388 (1997) ....................................................................................... 17

*Hansen Bancorp, Inc. v. United States*,
    367 F.3d 1297 (Fed. Cir. 2004) ......................................................................... 19

*Hendrick v. Lindsay*,
    93 U.S. 143 (1876) .............................................................................................. 16

*Hometown Fin., Inc. v. United States*,
    409 F.3d 1360 (Fed. Cir. 2005) ......................................................................... 18

*Imaginarium, LLC v. United States*,
    166 Fed. Cl. 234 (2023) ..................................................................................... 18

*Ind. Mich. Power Co. v. United States*,
    422 F.3d 1369 (Fed. Cir. 2005) ......................................................................... 21

*Keeter Trading Co. v. United States*,
    85 Fed. Cl. 613 (2009) ....................................................................................... 15

*LaMirage, Inc. v. United States*,
    44 Fed. Cl. 192 (1999) ....................................................................................... 17

*Lublin Corp. v. United States*,
    84 Fed. Cl. 678 (2008) ................................................................................. 16, 17

*Manitou Island Transit, LLC v. United States*,
    168 Fed. Cl. 218 (2023) ..................................................................................... 11

*Martin v. United States*,
    102 Fed. Cl. 779 (2012) ............................................................................... 11, 12

*Metzger, Shadyac & Schwarz v. United States*,
    12 Cl. Ct. 602 (1987) ......................................................................................... 12

*Mobil Oil Expl. & Producing Se., Inc. v. United States*,
    530 U.S. 604 (2000) ........................................................................................... 16

*Mod. Sys. Tech. Corp. v. United States*,
    979 F.2d 200 (Fed. Cir. 1992) ..................................................................... 12, 18

*Nat'l Micrographics Sys., Inc. v. United States*,
    38 Fed. Cl. 46 (1997) ......................................................................................... 11

*Rick's Mushroom Serv., Inc. v. United States*,
    521 F.3d 1338 (Fed. Cir. 2008) ................................................................ 15

*Russell Corp. v. United States*,
    537 F.2d 474 (Ct. Cl. 1976) .................................................................... 10

*Seh Ahn Lee v. United States*,
    895 F.3d 1363 (Fed. Cir. 2018) ................................................................ 11

*Smith v. Mountjoy*,
    694 S.E.2d 598 (Va. 2010) ...................................................................... 17

*Steinberg v. United States*,
    90 Fed. Cl. 435 (2009) ............................................................................ 12

*Stockton E. Water Dist. v. United States*,
    583 F.3d 1344 (Fed. Cir. 2009) ................................................................ 16

<u>Statutes</u>

22 U.S.C. § 2698 ............................................................................................ 19

28 U.S.C. § 1491(a)(1) .................................................................................. 10

<u>Other Authorities</u>

Restatement (Second) of Contracts § 24 (Am. L. Inst. 1981) ........................ 12

Restatement (Second) of Contracts § 33 (Am. L. Inst. 1981) ............ 12, 13, 18

Restatement (Second) of Contracts § 71 (Am. L. Inst. 1981) ........................ 12

Black's Law Dictionary (12th ed. 2024) ...................................................... 17

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GORDON D. SONDLAND,        )
                                   )
     Plaintiff,              )
                                   )
     v.                    )       No. 21-2083C
                                   )       Senior Judge Smith
THE UNITED STATES,        )
                                   )
     Defendant.           )

## <u>DEFENDANT'S PRETRIAL BRIEF</u>

Pursuant to the Rules of the United States Court of Federal Claims and the Court's order dated December 16, 2024, ECF No. 63, defendant, the United States, respectfully submits this pretrial brief.  Plaintiff, Gordon D. Sondland, is the former United States Ambassador to the European Union.  In 2019, Amb. Sondland and several other U.S. Department of State officials were called upon by Congress to provide testimony in connection with the first impeachment inquiry relating to President Trump, focusing on events relating to Ukraine.

Rules imposed by the relevant House of Representatives committees prevented these individuals from having State Department counsel present for their depositions.  Many therefore retained private counsel.  In response to requests from these individuals, the State Department ultimately created a program whereby the individuals could submit reimbursement requests and, upon approval by the State Department's Under Secretary for Management, be reimbursed up to a specified number of attorney hours, at pre-established rates.  A number of individuals, including Amb. Sondland, came to submit requests for reimbursement and were approved.

Amb. Sondland asserts in this lawsuit that he is not subject to the limits of the State Department's reimbursement program, because soon after the inquiry was announced, he allegedly made a *sui generis* contract with Michael R. Pompeo, who was at that time the Secretary of State.  In Amb. Sondland's telling, during a phone call on October 3, 2019, which

Secretary Pompeo allegedly took from a car in Italy, Secretary Pompeo made an enforceable promise that the United States would unconditionally reimburse the entirety of Amb. Sondland's private legal fees in connection with the impeachment inquiry.

But Amb. Sondland cannot prove the existence of a contract. There was no bargained-for exchange between the parties. Secretary Pompeo sought no commitment from Amb. Sondland as to any aspect of the impeachment inquiry, very much including Amb. Sondland's already-made decision to retain private counsel. Thus, there is in this case no intent to contract, and no consideration, with the absence of either one independently defeating the suggestion of a contract. Moreover, the contract alleged by Amb. Sondland is insufficiently definite to provide terms – Amb. Sondland never even identified his attorneys to Secretary Pompeo, much less did he explain their rates or estimate the total cost of the retention. Amb. Sondland has pleaded a blank check and urges the Court to fill in the details – in essence a promissory estoppel claim. But there was no promise, and even if there were, this Court lacks jurisdiction over such claims because the United States has not waived sovereign immunity as to implied-in-law contracts.

To the extent the Court does find a contract, Amb. Sondland nonetheless will be unable to prove his damages to a reasonable degree of certainty. He claims to be entitled to reliance damages, but he cannot prove that he actually relied on any alleged promise by Secretary Pompeo. Amb. Sondland had already retained counsel by the time he spoke with Pompeo, and Amb. Sondland had every reason to devote his personal resources to ensuring that he was well-represented while under national scrutiny. There is no evidence that Amb. Sondland relied on Secretary Pompeo's alleged promise in the course of Amb. Sondland directing his counsel's work.

## STATEMENT OF FACTS

I.  **Amb. Sondland Is Requested To Appear Before Congress, Retains Private Counsel, And Testifies**

Amb. Sondland served as the U.S. Ambassador to the European Union from July 2018 to February 2020.  Compl. ¶ 15, ECF No. 25.  On September 24, 2019, the Speaker of the House of Representatives announced an impeachment inquiry into President Donald Trump.  Compl. ¶ 16. On September 25, 2019, Amb. Sondland was informed that "his name appeared in a whistleblower complaint received by the Office of the White House Counsel."  Compl. ¶ 17.  On September 26, 2019, Amb. Sondland's longtime personal attorney, Jim McDermott of the Ball Janik law firm, contacted the Acting Legal Adviser for the Department of State, Marik String, and asked String to "confirm that Ambassador Sondland's legal fees will be reimbursed by the [S]tate [D]epartment for this matter," apparently referring to the impeachment inquiry.  DX1.

On September 27, 2019, Secretary Pompeo received a letter stating that the House Committee on Foreign Affairs, Permanent Select Committee on Intelligence (HPSCI), and Committee on Oversight and Reform were "investigating the extent to which President Trump jeopardized national security by pressing Ukraine to interfere with our 2020 election and by withholding security assistance provided by Congress to help Ukraine counter Russian aggression."  PX4.  The letter received by Secretary Pompeo explained that the committees would be scheduling the depositions of certain State Department officials, including Amb. Sondland.  Consistent with the letter to Secretary Pompeo, Amb. Sondland received a letter from the chairmen of the committees on the same date, asking him to appear at a deposition to be held on October 10, 2019.  PX5.  The letter also requested that Amb. Sondland produce certain documents.  PX5.

Also on September 27th, Marik String responded to Jim McDermott's question regarding fee reimbursement, stating that Clifton Johnson, Assistant Legal Adviser for Management Affairs, would be in touch.  DX4.  Johnson then stated to McDermott that "[t]here's applicable law and regulations that . . . outline the very limited circumstances, which do not appear to be applicable here, where the U.S. Government may reimburse fees for private counsel."  DX4. Johnson referred McDermott to certain legal provisions that Mr. Johnson believed to be relevant. DX4.  McDermott did not respond to this email.

On September 28, 2019, Amb. Sondland announced to State Department officials that Robert Luskin of Paul Hastings LLP would be serving as co-counsel with Mr. McDermott. DX9.  And on September 30, 2019, Mr. McDermott submitted a claim to Starr Wright Insurance Agency, on behalf of Amb. Sondland.  DX12.  Starr Wright Insurance ultimately accepted the claim, up to a $200,000 limit.  DX18.

According to Amb. Sondland, on October 3, 2019, a call took place between Secretary Pompeo and Amb. Sondland.  During the call, Secretary Pompeo was out of the country, and Amb. Sondland was in a conference room at Paul Hastings, in Washington, D.C.  Amb. Sondland participated in the call by speakerphone, with three of his attorneys silently listening. Those attorneys were Robert Luskin, his partner Kwame Manley, and Jim McDermott.  While Amb. Sondland may have stated to Secretary Pompeo on the phone that he was with his attorneys, he did not identify his attorneys by name, and he did not announce them in a manner that would have clearly apprised Secretary Pompeo of the fact that they were actually listening in.

The primary focus of the call with Secretary Pompeo appears to have been whether Amb. Sondland should provide voluntary testimony to the House investigators.  For a few minutes,

however, the parties may have discussed the issue of fee reimbursement. We expect the trial testimony to be inconsistent about what, exactly, Amb. Sondland asked Secretary Pompeo. Only one set of notes memorializes this portion of this conversation, taken by Jim McDermott. The notes suggest that the topic discussed was a "claim for legal fees." DX17. The notes also purport to quote Secretary Pompeo as using the words "appropriate" and "reasonable" in relation to the apparent claim. DX17. The notes do not, however, indicate that Secretary Pompeo made any sort of proposal for the State Department to reimburse Amb. Sondland's legal fees, in exchange for some sort of return performance. Moreover, the notes record Pompeo as stating that Marik String, the Acting Legal Adviser, would be "managing the process." DX17.

Secretary Pompeo does not recall the conversation, which occurred over five years ago, apparently while he was engaged in overseas diplomacy and simultaneously managing the State Department's response to a presidential impeachment inquiry. Nevertheless, Secretary Pompeo does not believe that he committed the State Department to reimburse Amb. Sondland's legal fees, because he did not have the authority to separately commit the Government to pay for private counsel retained by a State Department employee.

Consistent with Mr. McDermott's call note that Marik String would "manage the process," on October 4, 2019, McDermott e-mailed Marik String and Michael Purpura, a White House official. DX18. McDermott explained that, while Amb. Sondland's insurer had accepted his claim, the insurer had imposed restrictions on reimbursement – including an hourly attorney rate. DX18. McDermott stated that, because Amb. Sondland's role in the investigation arose out of acts in the conduct of his employment, "the State Department and/or White House Counsel needs to ensure that Ambassador Sandland does not incur any out-of-pocket legal fees or related costs for simply doing his job on behalf of the U.S." DX18. McDermott further stated that

"Ambassador Sondland is hereby formalizing his claim for attorney fees and associated costs. (Yesterday, by telephone, Ambassador Sondland also informed Secretary Pompeo of his claim.)." DX18. While McDermott thus asserted that Amb. Sondland had informed Secretary Pompeo of his claim, McDermott did not state that Secretary Pompeo had offered any commitment regarding reimbursement.

On October 16, 2019, Marik String responded to McDermott's October 4th e-mail, stating that State was "continuing to examine potentially available options to address the issues" regarding fees, and that State "will be in touch as soon as we have more definitive guidance." DX26.

Amb. Sondland did not voluntarily appear for a deposition, and was instead subpoenaed by the House committees. He testified on October 17, 2019. DX23. On October 23, 2019, McDermott again wrote to String, seeking "confirmation that the Federal Government/State Department will be paying Ambassador Sondland's legal fees and costs associated with the impeachment inquiry." DX29. McDermott expressed to String an expectation that, based on Amb. Sondland's October 18th meeting with a State Department official named Lisa Kenna, "[String] or someone in [his] office would be in touch with Ambassador Sondland's legal team about establishing a protocol for getting us paid." DX29.

On November 7, 2019, Assistant Legal Adviser Johnson informed Amb. Sondland and his attorneys that the State Department was "prepared to consider assisting [Amb. Sondland] and others who are similarly situated with private counsel fees incurred in connection with the requests for your testimony by Congressional committees involved in the ongoing impeachment inquiry." PX15. Johnson explained that Amb. Sondland could submit a request for reimbursement, for up to 120 hours per month, at a rate of up to $300 per hour. PX15.

The next day, Robert Luskin e-mailed String about Johnson's e-mail.  DX36.  Luskin

asserted that the reimbursement program was insufficient, and that State "[was] free to and, in

fairness, should adopt rules that ensure that those who face the greatest challenges will be made

whole."  DX36.  Luskin furthermore "strongly urge[d] the Department to reconsider its policy to

ensure that it adequately addresses the need for which it was designed."  DX36.  Luskin neither

asserted nor implied that Secretary Pompeo had made a separate commitment regarding the

reimbursement of legal fees.  DX36.  In response, String told Luskin that Luskin's message

would be "discuss[ed] . . . with appropriate Department officials."  DX37.

Ambassador Sondland was again subpoenaed by Congress, this time to provide public

testimony on November 20, 2019.  DX38.  He testified on that date – the second and final time

that he provided testimony in the impeachment inquiry.

## II.    Amb. Sondland's Post-Testimony Efforts To Secure Reimbursement Of His Private Counsel Legal Fees

As indicated above, between late September 2019, when Amb. Sondland was first alerted

that he might be called upon to testify, through November 20, 2019, the Paul Hastings and Ball

Janik law firms were billing Amb. Sondland for work related to impeachment matters.  (And

some work apparently continued after Amb. Sondland's public testimony.)  On December 8,

2019, Amb. Sondland, through counsel, submitted four legal invoices to the State Department.

DX42.  He made a second submission on March 9, 2020.  DX57.[1]  The eight invoices across the

two submissions suggest the following fees and costs billed to Amb. Sondland:

---

[1]  Unredacted versions of the invoices included in these submissions are at DX41 and DX54, except that Defendant's exhibit DX54 contains a revised version of Paul Hasting's invoice no. 2221079, for the period 12/1/2019-12/31/2019, rather than the original version included in DX57.  This revised version indicates a discount to Paul Hastings' fee billed, which we discuss below.

| Invoicing Firm and Invoice Number | Period Covered | Hours Billed (rounded) | Fees and Costs Billed | Source |
|---|---|---|---|---|
| Paul Hastings LLP – 2213443 | 9/28/2019 – 10/31/2019 | 654 | $709,455.94 | DX42, DX41 |
| Ball Janik LLP – 250633 | 9/25/2019 – 10/31/2019 | 348 | $269,448.79 | DX42, DX41 |
| Paul Hastings LLP – 2216497 | 11/1/2019 – 11/30/2019 | 681 | $636,718.60 | DX42, DX41 |
| Ball Janik LLP – 251144 | 11/1/2019 – 11/30/2019 | 213 | $141,870.36 | DX42, DX41 |
| Paul Hastings LLP – 2221079 | 12/1/2019 – 12/31/2019 | 7 | $9,327.50 | DX57; DX54 |
| Ball Janik LLP – 251776 | 12/1/2019 – 12/31/2019 | 43 | $26,605.46 | DX57; DX54 |
| Paul Hastings LLP – 2225036 | 1/1/2020 – 2/7/2020 | 9 | $12,690.79 | DX57; DX54 |
| Ball Janik LLP – 252376 | 1/1/2020 – 1/31/2020 | 29 | $19,022.50 | DX57; DX54 |
| **Totals** | | **1984** | **$1,825,139.94** | |

The vast majority of the fees were allegedly incurred during the period from September 25, 2019, to November 30, 2019.  For that period, Amb. Sondland sought reimbursement from State for 1,896 billed hours.  This averages to almost 29 hours of billing per day, over 66 days.  Ambassador Sondland in turn testified for approximately 17 hours before Congress, and also submitted to Congress a three-page declaration.  DX33.

Portions of these bills were satisfied through means other than payment by Amb. Sondland.  Ambassador Sondland received a payment of $200,000 from his professional liability insurer.  DX47.  And Paul Hastings discounted Ambassador Sondland's fees by $205,503.04.  DX45.

We previously described, above, Amb. Sondland's efforts to secure a reimbursement commitment from the State Department, prior to his testimony on November 20, 2019.  Those efforts continued after the testimony was completed.  When Luskin submitted Amb. Sondland's

bills to the State Department on December 9, 2019, he asserted that it would not be "fair or appropriate for Ambassador Sondland to be required to bear this burden personally[,]" and that "if this were to have arisen in the private sector, in most jurisdictions, Ambassador Sandland would have a statutory claim for indemnification for his legal fees and expenses." DX42. Amb. Sondland also personally brought up the topic of fees to various State Department officials in January 2020, without asserting the existence of any agreement by Secretary Pompeo that the State Department would pay all of Amb. Sondland's legal fees. *See* DX44 (e-mail to Lisa Kenna); DX49 (e-mail to Brian Bulatao); DX48 (e-mail to Ulrich Brechbuhl).

On February 7, 2020, Amb. Sondland was terminated from his ambassadorship. *See* DX52. Soon afterward, Amb. Sondland contacted Brian Bulatao – the Under Secretary for Management – "to confirm . . . that the process for payment of legal fees . . . continues per plan and that after payment of those fees under the existing policy (to happen right away) a policy review will take place to accommodate actual legal fee costs." DX53. On February 24, 2020, and pursuant to a State Department policy that had been developed to provide the possibility of reimbursement to agency employees called upon to provide information in the impeachment inquiry, Bulatao approved the payment of $86,040 in legal fees reimbursement to Amb. Sondland. DX55. This reimbursement was communicated to Luskin on March 3, 2020. DX59. The State Department arrived at that amount by applying the same hours limit and hourly rate that it applied to all other employees requesting reimbursement. DX55. The agency moreover made an exception to the policy for Amb. Sondland, by approving reimbursement on top of insurance proceeds received by Amb. Sondland, despite the policy providing that an insurance recovery would preclude reimbursement. DX55. On September 10, 2020, in preparation for litigation, Robert Luskin invoked the conversation with Secretary Pompeo, claiming that it

constituted an "assurance[]" that gave Amb. Sondland "a reasonable expectation that his fees would be paid." PX27.[2]

## STATEMENT OF ISSUES OF FACT AND LAW

1.      Whether a contract exists. In particular, whether there is a bargained-for exchange and sufficiently definite terms to support the existence of a contract.

2.      To the extent the Court finds that it is able to construct definite contract terms despite the vague nature of the conversation between Amb. Sondland and Secretary Pompeo, whether Amb. Sondland can prove his alleged damages.

## APPLICABLE LEGAL PRINCIPLES

### I.    For The Court To Find A Contract, Amb. Sondland Must Prove A Bargained-For Exchange And Sufficiently Definite Terms

The Tucker Act supplies the Court of Federal Claims with jurisdiction for claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491(a)(1). Ambassador Sondland here asserts breach of "an express or implied contract between the parties." Pl. Trial Br. at 8, ECF No. 72.

"For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." *Russell Corp. v. United States*, 537 F.2d 474, 481 (Ct. Cl. 1976). In the absence of an express contract, plaintiffs may seek to prove an

---

[2] In his letter to String, Mr. Luskin misstated the date on which Amb. Sondland spoke with Secretary Pompeo. The trial record will establish that no call with Pompeo took place on October 16, 2019.

implied-in-fact contract.[3]  An implied-in-fact contract is "an agreement . . . founded upon a

meeting of minds, which, although not embodied in an express contract, is inferred, as a fact,

from conduct of the parties showing, in the light of the surrounding circumstances, their tacit

understanding."  *Martin v. United States*, 102 Fed. Cl. 779, 785 (2012) (citing *Balt. & Ohio R.R.*

*Co. v. United States*, 261 U.S. 592, 597 (1923)); *see City of Cincinnati v. United States*, 153 F.3d

1375, 1377 (Fed. Cir. 1998) (same).[4]

Express and implied-in-fact contracts both require "(1) mutuality of intent to contract; (2)

consideration; and, (3) lack of ambiguity in offer and acceptance."  *City of Cincinnati*, 153 F.3d

at 1377.  Moreover, where the United States is a party, "the government representative whose

conduct is relied upon must have actual authority to bind the government in contract."  *Id.*  The

absence of any one of these elements renders a contract unenforceable.  *See, e.g.*, *Nat'l*

*Micrographics Sys., Inc. v. United States*, 38 Fed. Cl. 46, 51 (1997) (holding that even if the

plaintiff can establish the other elements of a contract, the claim must fail for lack of

consideration).

To prove mutuality of intent, the plaintiff must show, by objective evidence, that one

party to the contract extended an offer and then that the other party accepted that offer.

---

[3]  "It is well settled that 'the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract."  *Seh Ahn Lee v. United States*, 895 F.3d 1363, 1370 (Fed. Cir. 2018) (quoting *Bank of Guam v. United States*, 578 F.3d 1318, 1329 (Fed. Cir. 2009)).

[4]  This Court lacks jurisdiction to entertain breach claims in relation to a second type of implied contract, namely those implied in law.  Such contracts "impose duties that are deemed to arise by operation of law" in order to prevent an injustice, and they are "outside the jurisdiction of the Court of Federal Claims."  *City of Cincinnati*, 153 F.3d at 1377.  The Court similarly lacks jurisdiction to consider claims of detrimental reliance or promissory estoppel, as such claims require the finding of a contract implied-in-law.  *See Manitou Island Transit, LLC v. United States*, 168 Fed. Cl. 218, 224 (2023).

*Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).  An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  *Anderson*, 344 F.3d at 1343 (quoting Restatement (Second) of Contracts § 24 (Am. L. Inst. 1981)).

Consideration, the second requirement of a contract, "is manifested by a bargained-for exchange."  *Martin*, 102 Fed. Cl. at 786 (citing *First Fed. Sav. & Loan Ass'n of Rochester v. United States*, 58 Fed. Cl. 139, 150 n.15 (2003), and Restatement (Second) of Contracts § 71). "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."  *Steinberg v. United States*, 90 Fed. Cl. 435, 444 (2009) (quoting Restatement (Second) of Contracts § 71(2)).  "In determining whether there was consideration, the question is not whether one party received a benefit (tangible or otherwise), but whether the benefit was bargained for."  *Steinberg*, 90 Fed. Cl. at 446; *see also Metzger, Shadyac & Schwarz v. United States*, 12 Cl. Ct. 602, 605 (1987) (holding that sufficient consideration "must render a benefit to the government, and not merely a detriment to the contractor").  "If the benefit was not bargained for . . . it cannot constitute consideration necessary to support a contract."  *Id.*  The requirement of consideration in turn implicates the requirement of actual authority, because "government officers lack authority to enter into contracts under which the government receives nothing."  *Aviation Contractor Emps., Inc. v. United States*, 945 F.2d 1568, 1573 (Fed. Cir. 1991).

"In the absence of . . . sufficiently definite terms, no contractual obligations arise."  *Mod. Sys. Tech. Corp. v. United States*, 979 F.2d 200, 202 (Fed. Cir. 1992).  "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain."  Restatement (Second) of

Contracts § 33(1).  "To be valid and enforceable, a contract must have . . . sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Doe v. United States*, 95 Fed. Cl. 546, 584 (2010) (quoting *Ace–Fed. Reps., Inc. v. Barram,* 226 F.3d 1329, 1332 (Fed. Cir. 2000) (internal quotations omitted)); *see* Restatement (Second) of Contracts § 33(2) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").  Moreover, "[t]he fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."  *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1360 (Fed. Cir. 2006) (quoting Restatement (Second) of Contracts § 33(3)).

II.    **Ambassador Sondland Cannot Prove A Contract**

   A.    **The Alleged Contract Lacks Consideration Because There Was No Bargained-For Exchange**

With reference to the above legal principles, no contract was formed between Amb. Sondland and the United States.  Even if the Court accepts that the event allegedly giving rise to the contract occurred – namely the October 3rd phone call – it will be impossible to conclude from the testimony regarding that phone call and the attendant circumstances that there was a mutual intent to contract, consideration, and a lack of ambiguity in offer and acceptance.

The alleged phone call between Amb. Sondland and Secretary Pompeo apparently took place while Secretary Pompeo was abroad, and the call was primarily focused on whether Amb. Sondland should voluntarily testify in the impeachment inquiry, as House investigators had asked him to do (at the time of the call, Amb. Sondland had not yet been subpoenaed).  At some point during the alleged conversation, Amb. Sondland apparently raised the issue of his impeachment-related legal fees, and asserted or requested that the fees be paid by the State

Department.  We expect that Amb. Sondland will not be able to prove that he even identified his attorneys to Secretary Pompeo, much less did Amb. Sondland definitize the number of hours they would work, their billing rates, or what specific tasks they would perform.  At most with respect to cost, Amb. Sondland may have indicated without specifics that his representation would be expensive.

In addition to not proving with any certainty what Amb. Sondland demanded, plaintiff also will not be able to prove how Secretary Pompeo responded.  Of the three experienced attorneys in the room with Amb. Sondland, only Jim McDermott took notes.  McDermott recorded Secretary Pompeo as saying the words "reasonable" and "appropriate" in connection with Amb. Sondland's request, but there is no written indication that Pompeo offered to pay Amb. Sondland's fees.  Moreover, the notes suggest that Secretary Pompeo stated that Marik String, State's Acting Legal Adviser, would manage the "process" to get Amb. Sondland's fees paid.  This notation plainly indicates at most an expectation of further discussions, rather than a consummated agreement.

Communications from Amb. Sondland and his legal team after October 3rd are completely consistent with a conclusion that no agreement had been reached on the call, and that Marik String and agency officials other than Secretary Pompeo would decide the extent of reimbursement.  The day after the call, Jim McDermott sent a lengthy e-mail to String, and noted that Amb. Sondland had "informed Secretary Pompeo of his claim."  DX18.  But McDermott did not further assert to String that Secretary Pompeo had responded to that claim by offering to contract with Amb. Sondland.  Nothing close to such an assertion was made until September 10, 2020 – almost a year later and in preparation for litigation.  PX27.  And when Robert Luskin, at that time, invoked the conversation with Secretary Pompeo, he merely claimed that it constituted

14

an "assurance[]" that gave Amb. Sondland "a reasonable expectation that his fees would be paid." PX27. Luskin also asserted that Amb. Sondland "continued to seek legal services in reliance." PX27. But he never suggested that Amb. Sondland possessed a legal right to payment based on some agreement of the parties.

These facts do not support the existence of a contract. Most fundamentally, Amb. Sondland cannot prove any *bargained-for* exchange. No party to the alleged call will testify that Secretary Pompeo sought anything at all from Amb. Sondland in exchange for the alleged promise to pay Amb. Sondland's legal fees. To the contrary, both before and after the call Amb. Sondland was entirely free to hire any number of attorneys he liked – in addition to the two law firms that he did hire – and to fire them at will. He also was free to respond to House requests and subpoenas in whatever manner he viewed as being in his own best interest. As Robert Luskin stated at his deposition, there was "no quid pro quo." *Cf. Keeter Trading Co. v. United States*, 85 Fed. Cl. 613, 629 (2009) ("There must be some form of quid pro quo or, in government procurement parlance, there must be consideration.").

In an attempt to save his claim despite this fundamental shortcoming, Amb. Sondland makes two arguments to show that consideration is present here. First, he suggests that "[t]he Government received significant benefits." Pl. Br. at 10. Again, however, it is not enough to show that the United States received some benefit – it needs to have been a *bargained-for* benefit, and here there was none. The two cases cited by Amb. Sondland are not to the contrary. In *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008), the Federal Circuit addressed whether a cooperative agreement was subject to the Contract Disputes Act. *See id.* at 1344. The word "consideration" does not appear in the decision, and it has no relevance here. And there was a bargained-for benefit in *Gardiner, Kamya, & Associates, P.C.*

15

*v. Jackson*, 369 F.3d 1318 (Fed. Cir. 2004).  Specifically, the Federal Circuit determined that the contractor in that case would not have entered into the modification at issue absent the agency's willingness to conduct an audit and make a price adjustment.  *See id.* at 1323.  Thus, contrary to Amb. Sondland's assertion, Pl. Br. at 10, the finding of consideration in that case was not based on the mere fact that the Government received a benefit.

In addition to arguing for a Government benefit, Ambassador Sondland asserts that "detrimental reliance constitutes valid consideration."  Pl. Br. at 11.  Amb. Sondland cites eight cases in support of this proposition, but they do not establish such a rule.  The Supreme Court in *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604 (2000), was focused on an entirely different issue, namely the point that, where one party repudiates a contract, the other party is entitled to restitution for any benefit conferred by way of part performance of reliance.  *See id.* at 608.  *Hendrick v. Lindsay*, 93 U.S. 143 (1876), suggests that a detriment to the promisee will stand as consideration even without any benefit to the promisor, *see id.* at 148-49, but the case does not negate the well-established rule that there must be a bargained-for exchange.  It is unclear why plaintiff cites *Stockton East Water District v. United States*, 583 F.3d 1344 (Fed. Cir. 2009), as the word "consideration" does not even appear in the decision.

The decisions of this Court cited by plaintiff also do not support the proposition that detrimental reliance by a promisee will suffice as consideration in the absence of a bargained-for exchange.  *Anchorage v. United States*, 148 Fed. Cl. 338 (2020), does not address detrimental reliance.  *Cf. Anchorage v. United States*, 123 F.4th 1315, 1320 (Fed. Cir. 2024) (holding that alleged contract was unenforceable due to indefiniteness).  And even in Amb. Sondland's own telling, the Court's decision in *Lublin Corp. v. United States*, 84 Fed. Cl. 678 (2008), focuses on

the requirement of a bargain rather than on whether detrimental reliance will suffice as

consideration in the absence of a bargain.  *See* Pl. Br. at 11-12 (citing and quoting *Lublin*, 84

Fed. Cl. at 682 n.7).  The Court in *Davis Wetlands Bank, LLC v. United States*, 114 Fed. Cl. 113

(2013), merely observed that consideration may take the form of a detriment to the promisee

under Virginia law, which does not apply here.  *See id.* at 121 (citing *Smith v. Mountjoy*, 694

S.E.2d 598, 602 (Va. 2010)).  And *Anchor Tank Lines, LLC v. United States*, 127 Fed. Cl. 484

(2016), has nothing to do with consideration; it is unclear why Amb. Sondland has cited it.

Ultimately with respect to consideration, Amb. Sondland is completely correct in

acknowledging that "Mr. Sondland could have given put [*sic*] little time and effort in his

preparation to appear before Congress in his capacity as a State Department employee."  Pl. Br.

at 12-13.  Secretary Pompeo never asked Amb. Sondland to appear before House investigators,

much less did he demand or propose that Amb. Sondland retain counsel.  There was no bargain,

and so there was no consideration and no contract.

At best, Amb. Sondland might show that Secretary Pompeo made a gratuitous promise –

"a promise made in exchange for nothing" and "not supported by consideration."  *See* Gratuitous

Promise, Black's Law Dictionary (12th ed. 2024).  But the Federal Circuit has held that

gratuitous promises are not enforceable contracts precisely because they lack consideration.  *See*

*Allen v. United States*, 100 F.3d 133, 134 (Fed. Cir. 1996) ("[Plaintiff's] promise to do or not do

anything . . . was purely gratuitous . . . and consequently there was no contract.").  Moreover,

this Court is not empowered to enforce the terms of any such gratuitous promise, because there is

no jurisdiction to entertain a promissory estoppel claim.  *See LaMirage, Inc. v. United States*,

44 Fed. Cl. 192, 199-200 (1999), *see also Gregory v. United States*, 37 Fed. Cl. 388, 396 (1997).

**B.    In Addition To Lacking Consideration, The Alleged Contract Has No Terms
And Therefore Is Unenforceable; Mutual Intent And Actual Authority Are
Also Lacking**

We ended the previous section by noting that Amb. Sondland at best might show a

gratuitous promise, unsupported by consideration.  But in fact, he cannot even show that,

because there was no promise of sufficient clarity to support the finding of a contract.  As noted

above, "[i]n the absence of . . . sufficiently definite terms, no contractual obligations arise."

*Mod. Sys. Tech. Corp.*, 979 F.2d at 202.  Amb. Sondland will not prove that Secretary Pompeo's

alleged offer contained any terms at all – for example, Amb. Sondland never even identified his

attorneys to Secretary Pompeo – and so the alleged contract was never definitized.  There is

simply no way for the Court to evaluate whether Amb. Sondland or the United States fully

performed their respective duties, because those duties were never defined except at the most

abstract level.  The alleged terms here are beyond indefinite; they are nonexistent.

The ambiguous nature of the alleged offer and acceptance also goes to whether the parties

mutually intended to contract, because "[t]he fact that one or more terms of a proposed bargain

are left open or uncertain may show that a manifestation of intention is not intended to be

understood as an offer or as an acceptance."  *Gemmy Indus. Corp.*, 452 at 1360 (quoting

Restatement (Second) of Contracts § 33(3)).  Between the absence of consideration and the lack

of definite terms, it will be impossible for the Court to find mutual intent.  "[E]vidence of the

United States' intent to contract often 'depends on the surrounding factual circumstances.'"

*Imaginarium, LLC v. United States*, 166 Fed. Cl. 234, 242 (2023) (quoting *Hometown Fin., Inc.

v. United States*, 409 F.3d 1360, 1365 (Fed. Cir. 2005)).  Nonetheless, "there needs to be

something more than a cloud of evidence that could be consistent with a contract to prove a

contract and enforceable contract rights."  *Imaginarium*, 166 Fed. Cl. at 242 (quoting *D & N

Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003)).

Amb. Sondland at most will present a cloud of evidence that could be consistent with a contract, but that is insufficient to prove his claim. There will be no evidence that the parties reached any understanding of the courses of action that Amb. Sondland and Secretary Pompeo would respectively undertake. Thus, there was no mutual intent to contract.

Finally with respect to the existence of a contract, we note that Secretary Pompeo lacked authority as a matter of law to enter into the contract claimed by Amb. Sondland. Amb. Sondland points to a source of law that he claims authorizes Secretary Pompeo to make contracts for the agency. Pl. Br. at 13 (citing 22 U.S.C. § 2698).[5] But "government officers lack authority to enter into contracts under which the government receives nothing." *Aviation Contractor Empls.*, 945 F.2d at 1573. Secretary Pompeo could not enter into a contract unsupported by consideration, and in fact he did not do so.

## III. Because Amb. Sondland Cannot Prove A Contract, He Cannot Show Breach

Amb. Sondland's inability to prove a definitized contract unavoidably means that he also cannot show that any contract was materially breached. As stated by Amb. Sondland, "[w]hether a particular breach is material 'depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties.'" Pl. Br. at 14 (quoting *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1312 (Fed. Cir. 2004)). Because there was no contract, there could be no breach – there is no obligation against which the Court might measure the parties' respective performances.

---

[5] The litigation certification cited by Amb. Sondland, Pl. Br. at 13, at most indicates a conclusion, based on a review of Amb. Sondland's complaint, that Secretary Pompeo was acting within the scope of his employment as to the matters alleged, and that therefore the United States should be substituted as the defendant in the district court litigation that was ultimately transferred to this Court. The document says nothing about Secretary Pompeo's contracting authority – it has no bearing on that issue.

## IV.    Even If The Court Were To Find A Contract, Ambassador Sondland Would Not Be Entitled To Damages

We have demonstrated above that Amb. Sondland and the United States did not enter into any express or implied-in-fact contract. But even if the Court does find a contract, it still would have to identify the particulars and then determine which were breached. As we have explained, Amb. Sondland will not be able to establish that Secretary Pompeo agreed to provide him a blank check for attorney fees. But even if he could, his quantification of damages is unsustainable. Amb. Sondland asserts that he "is entitled to recover $1,505,960 in legal fees and costs he incurred as a direct and proximate result of the Government's breach of the Indemnity Undertaking." Pl. Br. at 15-16. This is best understood as a claim for reliance damages, whereby the plaintiff is placed in as good a position as he was before the promise was made. *See Anchorage*, 123 F.4th at 1323.

As an initial matter, Amb. Sondland's alleged legal fees and costs do not add up. Amb. Sondland asserts that he incurred $1,792,000 in legal fees and costs, and then subtracts his insurance recovery and the State reimbursement payment to arrive at the $1,505,960 number. Pl. Br. at 11 n3. But Amb. Sondland's eight invoices show a total of $1,825,139.94 in legal fees and costs that Paul Hastings discounted by $205,503.04. DX41; DX42; DX45; DX54; DX57. Further reducing this quantum by the $200,000 insurance payment and $86,040 State reimbursement payment arrives at $1,333,596.90 in legal fees and costs.

In any event, under a reliance theory, Amb. Sondland is not entitled to recover damages for legal fees that he would have incurred even in the absence of the alleged contract – such amounts are not bargained-for. And while Amb. Sondland states that "[h]e used outside counsel in reliance on the promise and representation from Secretary Pompeo," Pl. Br. at 15, that claim is demonstrably false, because Amb. Sondland had already retained his counsel by the time he

spoke with Secretary Pompeo.  Moreover, we anticipate that the trial evidence will demonstrate that Amb. Sondland would not have used his counsel any differently in the absence of Secretary Pompeo's alleged promise.  Amb. Sondland had personal resources and was pulled into a national political spotlight.  It is no surprise that he was willing to pay a premium for competent counsel.  Given his own personal resources and interests, Amb. Sondland will not be able to prove to a reasonable certainty that his actions were in any way affected by the alleged promise by Secretary Pompeo.[6]

Amb. Sondland also failed to mitigate damages.  "Mitigation is appropriate where a reasonable person, in light of the known facts and circumstances, would have taken steps to avoid damage."  *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1375 (Fed. Cir. 2005). The evidence will show that, after October 3rd, no State Department officials ever communicated to Amb. Sondland an understanding that the agency was required to unconditionally reimburse all of Amb. Sondland's legal fees.  State's lack of acknowledgement in the face of Amb. Sondland's repeated requests for confirmation of reimbursement should have put Amb. Sondland on notice that he should reduce his counsel's billing, due to the possibility that State would not reimburse Amb. Sondland in full for fees incurred.

## OBJECTIONS TO PLAINTIFF'S EXHIBITS

We have attached to this pretrial brief our objections to the exhibits listed by plaintiff. We respectfully reserve the right to make objections as they arise in the course of plaintiff's trial presentation.

---

[6]  Of course, the lack of evidence that Amb. Sondland would have acted any differently in the absence of Secretary Pompeo's alleged promise also underscores our prior point that there was no contract.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should direct judgment in the Government's

favor.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director
GEOFFREY M. LONG
Senior Trial Counsel
JOSHUA D. TULLY
CATHERINE M. YANG
Trial Attorneys
Commercial Litigation Branch
OF COUNSEL:                      Civil Division, Department of Justice
                                 P.O. Box 480
MICHAEL ZUBROW                   Ben Franklin Station
Attorney-Adviser                 Washington, D.C. 20044
Office of the Legal Adviser      Telephone: (202) 616-0471
U.S. Department of State         E-mail: william.j.grimaldi@usdoj.gov

February 3, 2025                 Attorneys for Defendant

ATTACHMENT

# Defendant's Objections to Plaintiff's Exhibits
## *Sondland v. United States* (21-2083C)

| No. | Plaintiff's Description | Defendant's Objection(s) |
|---|---|---|
| 1. | Plaintiff's Amended Complaint [Dkt. 25] | |
| 2. | Westfall Certification [Dkt. 12] | Relevance (FRE 402); Foundation |
| 3. | 09-26-2019 Email from McDermott to Lisa Kenna re Payment of Fees | Improper compendium that combines two separate documents (FRE 1006); Hearsay (FRE 802) |
| 4. | 09-27-2019 Letter to Pompeo re Depo Schedule - US0000921- 0000924 | |
| 5. | 09-27-2019 Letter to Sondland from Engel and Schiff re Deposition Appearance on 10-10-2019 | |
| 6. | 09-29-2019 Luskin email to String, Sondland, McDermott, Kenneth Thomas and Geneva Sarni re Compliance with RFD Requests | Missing attachment (FRE 106); Hearsay (FRE 802) |
| 7. | 10-04-2019 Email from McDermott to Marik String re Claims for Costs | Hearsay (FRE 802); Omits remainder of email chain (FRE 106) |
| 8. | 10-07-2019 Letter to Luskin from Brian Bulatao re Instructions Not to Appear | |
| 9. | 10-21-2019 Email from Carol Leonnig to Luskin re scope of depo and documents (PH_02891-02892) | Hearsay (FRE 802) |
| 10. | 10-08-2019 Email from Sondland to Pompeo re Prep for Testimony | Hearsay (FRE 802) |

**Defendant's Objections to Plaintiff's Exhibits**
*Sondland v. United States* (21-2083C)

| | | |
|---|---|---|
| 11. | 10-08-2019 Letter to Sondland from Adam Schiff; Elijah Cummings re Deposition Appearance on 10-16-2019 | |
| 12. | 10-14-2019 Letter to Sondland from Adam Schiff; Elijah Cummings re Depo on 10-17-2019 | |
| 13. | 10-25-2019 Email re payments made (SONDLAND_000653- 000717 | Hearsay (FRE 802); Foundation; Improper compendium that combines multiple separate documents (FRE 1006) |
| 14. | 11-04-2019 Declaration of Gordon Sondland | Hearsay (FRE 802) |
| 15. | 11-07-2019 Email from Clifton Johnson to Sondland re Info on Assistance with Private Counsel Fees | |
| 16. | 11-12-2019 Subpoena to Gordon Sondland | |
| 17. | 11-21-2019 Senate Letter to Pompeo (US0001899-1900) | Relevance (FRE 402) |
| 18. | 11-24-2019 Email from Robert Luskin to Marik String re DOS Legal Assistance Program | Hearsay (FRE 802) |
| 19. | 12-09-2019 Email from Roberts to Marik String with Sondland invoices | Hearsay (FRE 802) |
| 20. | 01-28-2020 Email from Sondland to Bechbuhl re Payment of Sondland invoices | Hearsay (FRE 802); Omits remainder of email chain (FRE 106) |
| 21. | 02-06-2020 Schedule for T. Ulrich Bechbuhl | |

**Defendant's Objections to Plaintiff's Exhibits**

*Sondland v. United States* (21-2083C)

| | | |
|---|---|---|
| 22. | 02-24-2020 Email from Jim McDermott to Sondland re Inquiry on Status of Legal Fees | Hearsay (FRE 802) |
| 23. | 03-04-2020 - Email from Luskin to Liberman re Partial Reimbursement | Hearsay (FRE 802); Relevance (FRE 402) |
| 24. | 06-09-2020 Email from Burke to Luskin re DOS reimbursement (Burck Ex. 2) | Improper compendium that combines two separate documents (FRE 1006); Hearsay (FRE 802) |
| 25. | 06-23-2020 letter from Paul Hastings to Marik String re Final Attempt for Payment of Fees | Hearsay (FRE 802) |
| 26. | 08-28-2020 Email from Luskin to String re Sondland reimbursement (US0001151) | Hearsay (FRE 802) |
| 27. | 09-10-2020 Email from Luskin to Marik String re Phone Call re Assurances to Sondland re Reimbursement of Expenses in Full | Hearsay (FRE 802) |
| 28. | 09-24-2020 Email from Burck to Luskin re connecting with Pompeo | Improper compendium that combines two separate documents (FRE 1006); Exhibit provided includes additional email not described in exhibit list; Hearsay (FRE 802) |
| 29. | Defendant Response to Plaintiff's Interrogatories | |
| 30. | Handwritten Notes of Kwame Manley | |
| 31. | Itemization of Monies Due to Sondland | Not provided despite multiple requests (RCFC Appx A 13(a)). Defendant reserves all objections pending receipt of the document. |
| 32. | Notes of James McDermott | Hearsay (FRE 802) |